UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| SIGNATURE DEVELOPMENT, LLC; JEFF LAGE; and JENNIFER LANDGUTH, | ) ) ) | CIV. 11-5019-JLV |
| Plaintiffs, | ) ) ) | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL** [DOCKET NO. 22] |
| vs. | ) ) ) | |
| MID-CONTINENT CASUALTY COMPANY, | ) ) ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the court on a complaint by plaintiffs Signature Development, LLC, Jeff Lage, and Jennifer Landguth (collectively "Signature"), against Mid-Continent Casualty Company ("Mid-Continent"), alleging breach of contract, bad faith, breach of fiduciary duty, unfair trade practices, intentional infliction of emotional distress, and vexatious refusal to pay. See Docket No. 1. Jurisdiction is premised on the diverse citizenship of the parties and an amount in controversy in excess of $75,000. See 28 U.S.C. § 1332.

Pending is plaintiffs' motion to compel Mid-Continent to produce certain discovery which plaintiffs requested. See Docket No. 22. The district court, the Honorable Jeffrey L. Viken, referred this motion to this magistrate judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A). See Docket No. 32.

# FACTS

The facts pertinent to the motion pending before this court are as follows.[1]  Signature is a company engaged in the business of developing property.  Jeff Lage and Jennifer Landguth are both members of Signature.  Signature's lawsuit against Mid-Continent stems from three separate lawsuits filed against Signature and other defendants.  These actions include: Carlson v. Oxner Construction, et al.; Kerr v. Timberman, et al.; and Klosterman v. Dakota Castles, Inc., et al.  See Docket No. 1.  Signature also asserts that a separate lawsuit, Perry v. Timberman, et al. which does not form part of its claims in this matter is also relevant to the current motion.  Before discussing the various requests made by Signature in its motion to compel, the court will discuss the various facts pertaining to each lawsuit as they relate to the motion to compel now before the court.

## A.    The Carlson Action

Mid-Continent issued a policy of insurance to Signature with an initial period of August 22, 2003, to August 22, 2004.  The policy was renewed in one year increments through August 22, 2007.  On April 20, 2007, Scott and Caryn Carlson filed an action in South Dakota state court in the Seventh Judicial Circuit Court against Signature and other defendants.  The action asserted

---

[1] The facts are taken from plaintiffs' motion to compel and the documents contained within the record.  Mid-Continent did not discuss the facts in its response to plaintiffs' motion.

claims against Signature in relation to a home the Carlsons hired the defendants to build, alleging negligent misrepresentation and breach of contract, seeking rescission and assorted damages from Signature.  The Carlsons alleged, in part, that they suffered damages to their home when the basement floor began rising and cracking as a result of water expanding the soil beneath the Carlsons' home from 2004.

Oxner Construction ("Oxner"), and other defendants in the <u>Carlson</u> action, also alleged cross-claims against Signature alleging that the Carlsons' injuries or damages were brought about by the action or inaction of Signature. Oxner also alleged cross-claims against Signature alleging that if Oxner was negligent, there was a disproportion of fault between Oxner and Signature. Oxner sought contribution and indemnification from Signature based on the Carlsons' allegations against Oxner.  Mid-Continent was aware of the cross-claims.

By letter dated May 22, 2007, Mid-Continent accepted the defense of the Carlson case of behalf of Signature, stating:  "After review of the complaint, Mid-Continent Casualty Company has determined that there are allegations that may be covered by the policy.  Therefore, we are electing to accept the defense of Signature Development, LLC under a full reservation of all rights available at law and/or stipulated to by the terms, conditions and provisions of

3

the subject policy." [2]  See Docket No. 24-6 at 1.  Mid-Continent then hired the Costello Porter law firm to defend Signature in the Carlson action.

The Costello Porter law firm provided a defense to the Carlsons' claims thereafter until October 21, 2009, when it informed Signature by letter that: "After further review of the allegations within Plaintiff's Complaint and the general liability policy, we determined that the alleged damages are not 'Property Damage' resulting from an 'Occurrence' and are excluded by policy exclusions.  Therefore, Mid-Continent Casualty company will no longer provide a defense to Signature Development, LLC effective November 23, 2009." [3]  See Docket No. 24-7 at 1.  Mid-Continent further explained:

> When examining the claim at hand and the damages alleged, Mid-Continent Casualty Company must conclude that the alleged damages do not result in "Property Damage" or "Bodily Injury" as a result of an "Occurrence".  Additionally, as previously noted, the policy precludes coverage for work that is impaired, deficient, incomplete, inadequate, defective or otherwise in need of repair or replacement, as indicated in exclusions j.(5), j.(6), m. and n.  The policy excludes expected or intended injury under exclusion a., contractual liability under exclusion b., pollution damages under exclusion f. (2) and damage to your product under exclusion k.

---

[2] The letter also indicated that "[t]he defense is being provided under general liability policy number GL 530805 issued to named insured Signature Development, LLC with a policy period from 8/22/2003 to 8/22/2004 and incorporating a $1,000,000 each occurrence limit of liability pursuant to commercial general liability coverage form CG 00 01 10 01."  See Docket No. 24-6 at 1.

[3] The letter indicated that Mid-Continent based this decision to no longer provide for Signature's defense on the language of policy number GL 559604 with a policy period from 8/22/2004 to 8/22/2005.  See Docket No. 24-7 at 1.

As a consequence, Mid-Continent Casualty Company <u>will cease</u> <u>to defend Signature Development Company L.L.C. on November 23,</u> <u>2009.</u>

<u>Id.</u> at 5 (emphasis in original).

After receiving this letter, Signature sent Mid-Continent a response letter dated November 5, 2009, informing Mid-Continent that it could not simply end defense coverage during the middle of the pending case after agreeing to provide for the defense as Mid-Continent had done in October of 2009.[4]  <u>See</u> Docket No. 24-8.  Signature also asserted in the letter that Mid-Continent had no legal basis to end the defense coverage.  <u>Id.</u>  Despite Signature's letters, Mid-Continent still chose to terminate the insurance coverage benefits to Signature, a fact it informed Signature of by letter dated November 16, 2009.

Following Mid-Continent's withdrawal from defending Signature, Signature began a declaratory judgment action against Mid-Continent. Signature asked the court to declare that Mid-Continent had a duty to defend Signature under the terms of the insurance policy Mid-Continent had issued to Signature.

As a result of Mid-Continent terminating Signature's insurance benefits, Signature asserts that it incurred attorney's fees and costs to defend the

---

[4] Signature cited <u>Hawkeye-Sec. Ins. Co. v. Clifford by Clifford</u>, 366 N.W.2d 489, 491-92 (S.D. 1985) as authority on point.  In <u>Hawkeye-Sec.</u>, the court held that "[t]he insurer's duty to defend, once imposed, continues until the Court finds that the insurer is relieved of liability under the noncoverage provision of the policy."

Carlsons' claims and Oxner's cross-claim, and to institute the declaratory judgment action against Mid-Continent.  Mid-Continent ultimately paid compensatory damages to the Carlsons for the claims associated with their complaint.

On February 3, 2011, Signature offered to dismiss the declaratory judgment action against Mid-Continent if Mid-Continent would pay for the attorneys' fees and expenses that Signature incurred to defend the Carlson lawsuit after Mid-Continent ceased defending Signature.  See Docket No. 24-9. On February 7, 2011, Mid-Continent accepted the offer and agreed to pay for the attorneys' fees and costs Signature incurred on the condition that the declaratory judgment action be dismissed as a contested case settlement without admission of fault by any party.  See Docket No. 24-10.

However, when Mid-Continent proffered the written version of the parties' settlement agreement and release, a new term was inserted that had not been discussed via e-mail by the parties.  In the written draft of the settlement agreement, Mid-Continent purported to require that Signature release and forever discharge Mid-Continent

> from any and all claims, actions, liabilities, causes of action, complaints, demands, and/or damages of any type including but not limited to compensatory, punitive, or exemplary damages, costs, attorneys' fees, emotional distress, loss of income, interest, expenses, taxes and any other compensation allegedly arising out of any breach of contract, bad faith claim handling or processing, and/or vexatious conduct by Mid-Continent.

6

See Docket No. 24-11.

Signature asserts that the above requirement that would have required Signature to waive any bad faith claims is, in and of itself, bad faith and prohibited by South Dakota case law and statute.[5]  Signature refused to enter into the proffered written agreement and Mid-Continent never paid the attorneys' fees and expenses Signature incurred in the Carlson action. Signature brought this lawsuit against Mid-Continent in part due to Mid-Continent withdrawing its defense in the Carlson action and then attempting to condition settlement on Signature waiving its bad faith claim.

---

[5]  Signature cites Isaac v. State Farm Mut. Auto. Ins. Co., 522 N.W.2d 752, 761-62 (S.D. 1994) in support of this position.  In Isaac, the court held that clear and convincing evidence existed to form a reasonable basis to present the issue of punitive damages to the jury where settlement of the claims by the insurer were conditioned upon a release by the plaintiff of any bad faith claim that she may have with respect to the insurer's handling of the claim.
    Signature also asserts that this type of practice is also prohibited by South Dakota law:

> In dealing with the insured or representative of the insured, unfair or deceptive acts or practices in this business of insurance include, but are not limited to, the following:
>     . . . .
>     (4) Failing to promptly settle claims, where liability has become reasonably clear under the portion of the insurance policy coverage to influence settlement under other portions of the insurance policy coverage.

S.D.C.L § 58-33-67.

**B.     The <u>Kerr</u> Action**

On May 10, 2007, Mark and Sande Kerr brought a lawsuit against several parties including Signature.  The Kerrs alleged claims against the defendants including breach of contract, constructive fraud, actual fraud, and negligent misrepresentation.  The Kerrs' complaint stemmed from their claim that the defendants failed to take into account and to construct for the existing soil conditions.  Signature tendered the defense of this claim to Mid-Continent on or about May, 23, 2007, which was the day after Mid-Continent issued its letter accepting the defense of the Carlsons' claims.

On June 22, 2007, Mid-Continent issued a letter to Signature refusing to defend or indemnify Signature for the reason that the Kerrs' lot was sold prior to the retroactive date of the insurance policy.  However, Signature asserts that the Kerrs' allegations against Signature constituted continuing torts which occurred when Mid-Continent's policy was in effect.  Signature asserts they have now incurred attorneys' fees, costs, and damages to defend and settle the Kerrs' claims.

**C.     The <u>Klosterman</u> Action**

On May 10, 2007, Jeff and Sheila Klosterman brought a lawsuit against several parties including Signature.  The Klostermans alleged claims against defendants including breach of contract, constructive fraud, actual fraud, and negligent misrepresentation.  The Klostermans' complaint stemmed from their

8

claim that defendants failed to take into account and to construct for the existing soil conditions.  Signature tendered the defense of this claim to Mid-Continent shortly after the suit was filed.

On June 19, 2007, Mid-Continent issued a letter to Signature refusing to defend or indemnify Signature.  Signature asserts that the Klostermans' allegations constituted a continuing tort which occurred when Mid-Continent's policy was in effect.  Signature asserts that it has incurred attorneys' fees, costs, and damages to defend and settle the Klostermans' claims.

**D.     The <u>Perry</u> Action**[6]

On July 31, 2009, Robert and Amy Perry brought a lawsuit against several parties including Signature.  The Perrys alleged claims against the defendants including breach of contract, constructive fraud, actual fraud, and negligent misrepresentation.  The Perrys' complaint stemmed from their claim that the defendants failed to take into account and to construct for the existing soil conditions.  Signature tendered the defense of this claim to Mid-Continent.

On October 1, 2009, Mid-Continent issued a letter to Signature refusing to defend or indemnify Signature.  Signature asserts that the Perrys' allegations

---

[6] The <u>Perry</u> action is not a case that forms the basis of Signature's lawsuit against Mid-Continent before this court.  <u>See</u> Docket No. 1.  However, Signature asserts that it is similar to the <u>Carlson</u>, <u>Kerr</u>, and <u>Klosterman</u> lawsuits, in that it has the same plaintiffs' attorney, same defendants, and substantially the same claims, including negligent misrepresentation.  Because of the similar facts, Signature is seeking to compel Mid-Continent to provide the case file for <u>Perry</u> action.

against Signature constituted continuing torts which occurred when Mid-Continent's policy was in effect.  Signature asserts they have now incurred attorneys' fees, costs, and damages to defend and settle the Perrys' claims.

Signature brought this current lawsuit against Mid-Continent asserting that Mid-Continent breached its duty to defend Signature in the <u>Kerr</u> and <u>Klosterman</u> lawsuits.  Signature also asserts that Mid-Continent acted in bad faith by conditioning payment of the attorneys' fees and expenses, incurred by Signature after Mid-Continent withdrew its defense in the <u>Carlson</u> action, upon a release of any bad faith claim that Signature may have with respect to Mid-Continent's handling of that claim.

**E.    Procedural History**

Signature served its Second Set of Requests for Production of Documents on Mid-Continent on February 2, 2012.  On March 6, 2012, Signature served its Third Set of Requests for Production of Documents on Mid-Continent.  On April 25, 2012, counsel for Signature sent a letter to Mid-Continent asking for discovery responses by May 1, 2012.  On April 30, 2012, Mid-Continent served its responses to both sets of discovery requests.  <u>See</u> Docket Nos. 24-1, 24-2.  Mid-Continent did not provide any documents in response to these discovery requests.

On May 17, 2012, counsel for both parties met with the understanding that Mid-Continent was going to have documents to disclose.  At that meeting,

Mid-Continent produced only the company's annual reports.  The parties then agreed that Mid-Continent could have until May 29, 2012, to produce additional documents.  See Docket No. 24-3.  On May 29, 2012, Mid-Continent provided its First Supplemental Responses to Signature's Second Set of Requests for Production of Documents.  See Docket No. 24-4.  In that production, Mid-Continent provided documents responsive to Signature's requests for company goals and incentive plans (Req. Nos. 7 & 9) and training materials (Req. No. 13).

On June 7, 2012, Mid-Continent provided its Second Supplemental Responses to Signature's Second Set of Requests for Production of Documents.  See Docket No. 24-5.  Mid-Continent provided additional documents regarding company goals and incentives (Req. Nos. 7 & 9) and documents regarding searching information on its databases (Req. No. 26).  Mid-Continent also provided a privilege log identifying some of the documents it has refused to produce to Signature.  Id.

Thereafter, Signature filed its motion to compel with this court on June 26, 2012.  The instant motion concerns 14 separate document requests that Signature served on Mid-Continent that Mid-Continent either refused to produce documents on, or have limited their production of documents as to.

11

## DISCUSSION

### A.    Meet and Confer Requirement

Both the Federal Rules of Civil Procedure and this district's local rules of procedure require that parties meet and confer in an attempt to resolve discovery disputes before filing discovery motions.  See Fed. R. Civ. P. 37(a)(1); DSD LR 37.1.  A certification must be part of any discovery motion and the certification must show that a good-faith effort was made to resolve disputes before filing the motion.  Id.  Signature's counsel asserts that it has complied with both the Federal and local rules requiring the parties to try to work out discovery differences between themselves prior to filing a motion to compel. See Docket No. 22.  Mid-Continent does not disagree.  Therefore, the court finds that Signature has satisfied the meet-and-confer prerequisite to filing the instant discovery motion.

### B.    Scope of Discovery in a Civil Case

The scope of discovery is governed by Fed. R. Civ. P. 26.  The scope described by that rule is as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the

12

discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

<u>See</u> Fed. R. Civ. P. 26(b)(1).

This scope of discovery under subsection (b)(1) is limited by subsection

(b)(2)(C).  That subsection provides that:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>
>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>>
>> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

<u>See</u> Fed. R. Civ. P. 26(b)(2)(C).

The scope of discovery under Rule 26(b) is extremely broad.  <u>See</u> 8

Charles A. Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 2007 (2d

ed. 1994) (hereinafter "Wright & Miller").   The reason for the broad scope of

discovery is that "[m]utual knowledge of all the relevant facts gathered by both

parties is essential to proper litigation.  To that end, either party may compel

the other to disgorge whatever facts he has in his possession."  8 Wright &

Miller, § 2007, 96 (quoting <u>Hickman v. Taylor</u>, 329 U.S. 495, 507-08, 67 S. Ct.

385, 392, 91 L. Ed. 2d 451 (1947)).  The Federal Rules distinguish between discoverability and admissibility of evidence.  Id. at 95; see also Fed. R. Civ. P. 26(b), 32, and 33.  Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial.  These considerations are not inherent barriers to discovery, however.

The advisory committee's note to the 2000 amendments to Rule 26(b)(1) provide guidance on how courts should define the scope of discovery in a particular case:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.  The good-cause standard warranting broader discovery is meant to be flexible.
>
> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action.  The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision.  A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action.  For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. ... In each case, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.
>
> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. ... When judicial intervention is

14

> invoked, the actual scope of discovery should be determined
> according to the reasonable needs of the action.  The court may
> permit broader discovery in a particular case depending on the
> circumstances of the case, the nature of the claims and defenses,
> and the scope of the discovery requested.

See Fed. R. Civ. P. 26(b)(1) advisory committee's note.

The same advisory committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case.  Id.  "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required."  Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case."  Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

15

Discoverable information itself need not be admissible at trial; rather, "discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence." See Fed. R. Civ. P. 26(b)(1) advisory committee's note.

Once the requesting party has made a threshold showing of relevance, the burden shifts to the party resisting discovery to show specific facts demonstrating that the discovery is not relevant, or how it is overly broad, burdensome, or oppressive. Penford Corp. v. National Union Fire Ins. Co., 265 F.R.D. 430, 433 (N.D. Iowa 2009); St. Paul Reinsurance Co. v. Commercial Financial Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000). The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," is insufficient to carry the resisting party's burden–that party must make a specific showing of reasons *why* the relevant discovery should not be had. Cincinnati Ins. Co. v. Fine Home Managers, Inc., 2010 WL 2990118, *1 (E.D. Mo. 2010); Burns v. Imagine Films Entertainment, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

The plaintiffs' claims in this lawsuit are bad faith, breach of contract – duty to defend, breach of fiduciary duty, unfair trade practices, intentional infliction of emotion distress, and vexatious refusal to pay insurance benefits. Signature requests both compensatory and punitive damages on its claims.

To prove a bad faith cause of action, plaintiffs must show that Mid-Continent had no reasonable basis for denying policy benefits, and that it acted with knowledge or a reckless disregard as to the lack of a reasonable basis for the denial of policy benefits.  See Sawyer v. Farm Bureau Mut. Ins. Co., 2000 S.D. 144, ¶ 18, 619 N.W.2d 644, 649.

Plaintiffs also assert a claim of breach of contract based on Mid-Continent's duty to defend Signature.  In South Dakota, the duty to defend an insured " 'is much broader than the duty to pay a judgment rendered against the insured.' "  Cincinnati Ins. Co. v. Pro Enter., Inc., 394 F. Supp. 2d 1127, 1131 (D.S.D. 2005) (quoting Biegler v. Am. Family Mut. Ins. Co., 2001 S.D. 13, ¶ 20, 621 N.W.2d 592, 599).  "The insurer has the burden of proof on the duty to defend issue. 'To satisfy this burden the insurer must show that the claim *clearly* falls outside of the policy coverage.' "  Id. (emphasis in original).  "In addition, if the complaint against the insured contains one claim that falls within the policy coverage, the duty to defend arises even though the pleadings are ambiguous or reveal other claims not covered by the policy, and notwithstanding that extraneous facts indicate the claim is false, groundless or even fraudulent."  Id. (citations omitted).

Plaintiffs also assert a claim for breach of fiduciary duty.  "In a third party coverage situation, the relationship of an insurer to its insured is like that of a fiduciary because the insurer must give as much consideration to its

17

insured's interests as it does its own." <u>Bertelsen v. Allstate Ins. Co.</u>, 2011 S.D. 13, ¶ 47, 796 N.W.2d 685, 700.  A "fiduciary has the duty to act primarily for the benefit of the other." <u>Giebink v. Giegink</u>, 2009 WL 1350805, *4 (D.S.D. 2009).  To recover for breach of fiduciary duty, the plaintiffs must prove that "(1) defendant breached [its] fiduciary duty, which required [it] to act for the benefit and in the best interest of the plaintiff in the course of the fiduciary relationship and (2) the breach of the fiduciary duty proximately caused damage." <u>Fed. Beef Processors, Inc. v. Royal Indem. Co.</u>, 2008 WL 4560617, *9 (D.S.D. 2008) (citing SD Civil PJI 160-03).

Plaintiffs premise their claim of unfair trade practices on SDCL chapter 58-33.  Section 5 of Chapter 58-33 prohibits the making of a misrepresentation as to the provisions of, or benefits available under, an insurance policy.  <u>See</u> SDCL § 58-33-5.  In section 67 of that chapter, unfair or deceptive insurance company practices are defined to include failing to make a payment of benefits that is reasonably clearly required under the policy in order to obtain a settlement of benefits due under other portions of the policy.  <u>See</u> SDCL § 58-33-67(4).  Chapter 58-33 provides a private right of action for damages for any insured claiming to have been injured by an insurance company's unfair insurance practice.  <u>See</u> SDCL § 58-33-46.1.  Claimants suing under this provision are entitled to an award of reasonable attorney's fees if successful. <u>Id.</u>

18

Plaintiffs also assert a claim of intentional infliction of emotional distress ("IIED").  The tort of IIED is a common law claim governed by South Dakota state law.  A plaintiff asserting an IIED claim must show four elements:  "(1) an act by the defendant amounting to extreme and outrageous conduct; (2) intent on the part of the defendant to cause the plaintiff severe emotional distress; (3) the defendant's conduct was the cause in-fact of plaintiff's distress; and (4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct."  Fix v. First State Bank of Roscoe, 2011 S.D. 80, ¶ 19, 807 N.W.2d 612, 618 (quoting Anderson v. First Century Fed. Credit Union, 2007 S.D. 65, ¶ 38, 738 N.W.2d 40, 51-52).  As to element number two, liability may also ensue for reckless conduct on the part of the defendant, as opposed to intentional conduct.  Petersen v. Sioux Valley Hosp. Ass'n., (Petersen II), 491 N.W.2d 467, 469 (S.D. 1992); Wangen v. Knudson, 428 N.W.2d 242 (S.D. 1988).

The plaintiffs premise their claim for vexatious refusal to pay insurance benefits on SDCL chapter 58-12.  Under section 3 of Chapter 58-12, an insured may recover the costs of its attorney fees in an action against an insurer who "has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause."  The court must determine three issues before it can award attorney fees. "First, whether the insurance company refused to pay the full amount of a loss.  Second, whether the refusal

19

was vexatious or without reasonable cause.  And third, what is a reasonable charge for the work performed to enforce the insurance contract claim, vis-a-vis any other claims jointly brought."  Tripp v. Western Nat. Mut. Ins. Co., 2010 WL 4791819, *1; Civ. No. 09-4023, Docket No. 105, at page 3 (D.S.D. Nov. 17, 2010) (citing Biegler, 2001 S.D. at ¶ 56, 621 N.W.2d at 606).

Plaintiffs have also included a request for punitive damages.  To be entitled to an award of punitive damages, plaintiffs must show that Mid-Continent acted with malice, actual or implied.  See Bertelsen, 2011 S.D. at ¶ 39, 796 N.W.2d at 698-99 (citing SDCL § 21-3-2).  "Actual malice is a positive state of mind, evidenced by a positive desire and intention to injure one another, actuated by hatred or ill-will towards that person."  Id. at 699 (quoting Biegler, 2001 S.D. at ¶ 45, 621 N.W.2d at 605).  "By contrast, presumed malice is 'malice which the law infers from or imputes to certain acts.' " Id. (quoting Harter v. Plains Ins. Co., 1998 S.D. 59, ¶ 36, 579 N.W.2d 625, 634). "Presumed malice may not 'be motivated by hatred or ill-will but is present when a person acts willfully or wantonly to the injury of others.' " Id. (quoting Biegler, 2001 S.D. 13, ¶ 45, 621 N.W.2d at 605).

In awarding punitive damages, a jury is to evaluate:  (1) the degree of reprehensibility of the defendant's misconduct;[7] (2) the disparity between the

---

[7] Among the factors considered in determining the appropriateness and amount, if any, of punitive damages to award, the degree of reprehensibility of the defendant's conduct is paramount.  State Farm Mut. Auto. Ins. Co. v.

harm (or potential harm) suffered by the plaintiff and the punitive damages

award; and (3) the difference between the punitive damages awarded by the

jury and the civil penalties authorized or imposed in comparable cases.  Roth v.

Farner-Bocken Co., 2003 S.D. 80, ¶46, 667 N.W.2d 651, 665-66 (citing State

Farm v. Campbell, 538 U.S. 408, 418 (2003)).  In evaluating these factors, it is

relevant whether the harm caused to plaintiffs was a company policy or

practice.  Id. at ¶ 65, 667 N.W.2d at 669.  With these legal issues in mind as to

plaintiffs' claims, the court turns to the individual discovery requests which are

in dispute.

## C.   Individual Discovery Requests:  Second Set of Requests for Production of Documents

### 1.   Mid-Continent's General Objections

At the outset of their response to Plaintiffs' Second Set of Requests for

the Production of Documents, Mid-Continent lists several general objections

that Mid-Continent believes apply to Signature's requests.  See Docket No. 24-1

at 1-2.  Signature asserts that these general objections should be dismissed

---

Campbell, 538 U.S. 408, 419 (2003); Roth v. Farner-Bocken Co., 2003 S.D. 80,
¶48, 667 N.W.2d 651, 666.  When considering this factor, one considers
whether "the harm caused was physical as opposed to economic; [whether] the
tortious conduct evinced an indifference to or a reckless disregard of the health
or safety of others; [whether] the target of the conduct had financial
vulnerability; [whether] the conduct involved repeated actions or was an
isolated incident; and [whether] the harm was the result of intentional malice,
trickery, or deceit, or mere accident."  Roth, 2003 S.D. 80, ¶ 49, 667 N.W.2d at
666 (quoting Campbell, 538 U.S. at 419).

without discussion.  Mid-Continent asserts that the court should not disregard these general objections, but examine the merits of Mid-Continent's position in relation to its general objections.

"[B]oilerplate objections are unacceptable."  Kooima v. Zacklift Intern. Inc., 209 F.R.D. 444, 446 (D.S.D. 2002).  "The party resisting discovery must show specifically how each interrogatory or request for production is not relevant or how each question is overly broad, burdensome or oppressive."  Id. (citing St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508 (N.D. Iowa 2000)).  Notwithstanding Mid-Continent's general objections, the court will consider the individual discovery requests.

### 2.    Plaintiffs' Request No. 1:  Claims Files

Plaintiffs' request for the production of documents number 1 reads as follows:

> Your complete claims filed relating to the *Carlson, Kerr,* and *Klosterman*, lawsuits/claims, whether maintained in defendant's field office, regional office, home office, or any other office....

Signature asserts that Mid-Continent objected to providing these claims files, but ultimately provided the claims files subject to objection.  Mid-Continent asserts that it has provided the entirety of its claims files relating to the *Carlson, Kerr,* and *Klosterman*, lawsuits/claims in connection with Mid-Continent's initial disclosures and responses to plaintiffs' first set of discovery requests.  This is acknowledged by Signature in a letter dated May 18, 2012.

22

See Docket No. 28-1 at 1; see also Docket No. 27 at ¶ 4 (Affidavit of Keith Nye indicating that Mid-Continent has provided the entire claims files for the *Carlson, Kerr,* and *Klosterman* matters to Signature).

Mid-Continent objected on the basis that the request for these claims files sought information protected by the attorney/client privilege and attorney work-product doctrine because the request sought information prepared in anticipation of litigation, or contained the mental impressions, conclusions, opinions and legal theories of Mid-Continent's attorneys.  See Docket No. 24-1 at 3.  Whether documents are prepared in anticipation of litigation is a factual determination.  Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987).  The federal rules provide that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).

The Eighth Circuit distinguishes between documents produced in the ordinary course of business and in anticipation of litigation:

> [T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.  But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

23

Id. at 401.  The Advisory Committee notes following Rule 26 indicate that "[m]aterials assembled in the ordinary course of business . . . or for other nonlitigation purposes" are not subject to qualified immunity under the Rule. Fed. R. Civ. P. 26(b)(3) advisory committee's note.

Signature is requesting claims files related to the cases which form the basis for the litigation in this case.  In order to prove a claim of bad faith denial of an insurance claim, Signature must prove that Mid-Continent denied its claims knowing that there was no reasonable basis for the denial, or that Mid-Continent acted with reckless disregard as to whether a reasonable basis existed for denial of the claim.  McDowell v. Citicorp U.S.A., 2007 S.D. 53, ¶ 15, 734 N.W.2d 14, 19.   Additionally, Signature asserts that Mid-Continent breached its contract by failing to defend Signature in the underlying cases.

The claims files Signature requested in discovery may show why Mid-Continent changed its decision to defend Signature in the Carlson lawsuit and why it declined to defend Signature in the Kerr and Klosterman lawsuits.  The documents may further show whether Mid-Continent denied Signature's request to defend the claims initially with the knowledge that it had no reasonable basis for denying the request, or with reckless disregard to whether it had a reasonable basis for its actions.   These decisions by Mid-Continent form the basis for the lawsuit filed by Signature against Mid-Continent.

24

Furthermore, there is no indication that Mid-Continent's claims files were prepared solely in anticipation of litigation.  Mid-Continent's decision not to defend its insured was not likely a decision made in anticipation that the insured would then file suit against it. However, as Mid-Continent has already provided these case files to Signature, there is nothing for the court to compel under this request.  Therefore, as to this request, the motion to compel is denied as moot.

### 3.    Plaintiffs' Request No. 4:  Claims Manuals

Plaintiffs' request number 4 is as follows:

Request No. 4: All claims manuals, memoranda, directives, letters, and other forms of written or computerized communication directed to claims personnel, claims managers, claims supervisors, or any other person acting on behalf of defendant Mid-Continent Casualty Company in the handling of claims, that refer or relate in any way to the handling of claims generally or to the handling of claims of like character to the claims at issue in this action, including without limitations:

> a.    The documents  reflecting defendant Mid-Continent Casualty Company's claims settlement policies as they existed at the time defendant defined the claims at issue in this actions;
>
> b.    The documents reflecting any subsequent change of policy.

In response to this request, Mid-Continent objected on the grounds that the requested information was irrelevant to the subject matter of this action and was not reasonably calculated to lead to the discovery of admissible evidence and that the request sought information that contained confidential

25

commercial information, trade secrets, confidential, proprietary, commercial or financial information that was not essential to the proper prosecution of the action.  Later, Mid-Continent conceded that its parent company, Great American Insurance Group, does provide training to employees through an entity known as Great American University.  See Docket No. 24-3.  Mid-Continent then provided approximately 86 pages of documents in its First Supplemental Response.

However, in response to Signature's motion to compel, Mid-Continent again asserts that it does not have any information responsive to this request and that there are no "general" claims manuals, directives, or communications. Mid-Continent asserts that any "specific" communication concerning a specific claims file would be contained within a particular personnel or claim file and that these claims files have already been produced.  Signature asserts that Mid-Continent is attempting to interpret this request very narrowly in an attempt to avoid providing Signature the documents it uses to train its employees.  It is clear from the request that Signature is attempting to obtain documents that Mid-Continent uses to teach or train its employees how to adjust claims.

This court has previously held that claims manuals and related documents are discoverable.  See Hurley v. State Farm Mut. Auto. Ins. Co., 2012 WL 1600796, *5 (D.S.D. 2012) ("The claims manual could lead to relevant

information and provide context for the information relating to how UIM claims are handled."); Brown Bear v. Cuna Mut. Group, 266 F.R.D. 310, 329 (D.S.D. 2009) (finding that the request for "all claims manuals, procedure guide materials, or training materials for claim handlers" was relevant to proving a bad faith claim).

The court finds that information tending to show that Mid-Continent was applying the same policy language to claims by policyholders in different ways may be relevant to the issues of defendant's reprehensibility and whether it knew there was no reasonable basis for refusing to defend Signature. Additionally, training manuals are relevant to determine what process a claims adjuster must go through in determining whether Mid-Continent has a duty to defend a claim and which period of policy coverage applies when determining whether coverage exists.  These documents would have a direct bearing in determining whether Mid-Continent followed its own procedures when it discontinued coverage in the Carlson case and refused to defend Signature in the other cases.  Thus, the court finds that this request is not irrelevant to the subject matter of this action.  Furthermore, Mid-Continent has not shown that the requested information is subject to a claim of privilege.  Therefore, to the extent that Mid-Continent has not provided Signature with the requested training materials, Signature's motion to compel is granted.

**4.     Plaintiffs' Request No. 5:  Personnel Files**

Plaintiffs' request number 5 is as follows:

Request No. 5: Copies of all personnel files* of each person who
handled, reviewed, supervised, and/or audited the claims brought
against the Plaintiffs, including:
    1.     Robert Anderson
    2.     Raymond Corley
    3.     Curt Daniels
    4.     Billeye Davidson
    5.     Caroline Goodspeed
    6.     Gregory Lawrence
    7.     Kathy Ramsey-Hess
    8.     Keith Nye
    9.     Robert Pileggi
    10.    Frank Pope

*In order to protect the privacy of the affected employees, Plaintiffs
agree that none of these documents shall be used for any purpose
outside this lawsuit or disseminated in any way or made available to
the public without redacting the names and other identifying
information pertaining to the employees.

Mid-Continent agreed to produce these personnel files, subject to some

information being redacted, some documentation being withheld, and some

portions being marked as confidential.  Mid-Continent indicated that they

would produce the files once the Court signed the Protective Order that the

parties had stipulated to and submitted for the Court's consideration.  The

court has ruled on the parties' protective order.  See Docket No. 31 (granting

the parties' consent to protective order).

"The district court in the Western Division of the District of South Dakota

has traditionally and uniformly allowed discovery of personnel files in

28

insurance bad faith cases." <u>Lyon v. Bankers Life and Cas. Co.</u>, 2011 WL
124629 (D.S.D. 2011) (citations omitted).  Personnel files may reveal an
inappropriate reason or reasons for defendant's action with response to
plaintiff's claim or an "improper corporate culture."  <u>See id.</u>  However,
personnel files also typically contain documents such as health care
documents, life insurance, wages or salary, W-4s, I-9s, retirement account
information, information about employees' bank accounts for purposes of
electronic deposits, and counseling information regarding employee assistance
programs.  None of these documents are relevant to this case and Mid-
Continent is justified in redacting or withholding these portions of the files.  As
the district court has now ruled on the parties protective order, Signature's
motion to compel is granted and Mid-Continent shall provide the personnel
files in accordance with the protective order filed in this case to the extent that
Mid-Continent has not already done so.  Mid-Continent can redact or withhold
those parts of the personnel files as described above which are not relevant to
the current action.

> **5.    Plaintiffs' Request Nos. 7-10:  Bonus or Award Programs,
> Goals, Targets, or Objectives, and Performance Based
> Incentive Plans**

Plaintiffs' request numbers 7, 8, 9, and10 read as follows:

<u>Request No. 7:</u> Any and all documents that reference bonus or award
programs for which the personnel handling or reviewing claims are
or have been eligible in the past, from January 1, 2001, to the
present.   This would include the claims handlers, supervisors,

managers, or any other individuals in the chain of command up to
the head of Claims.

Request No. 8: Any and all documents referring to goals, targets, or
objectives from January 1, 2004, to present, which are or have been
communicated to claims personnel handling Commercial General
Liability claims.

Request No. 9: Any and all documents in use since January 1, 2004,
to present which relate to the manner in which claims personnel,
including supervisory personnel, might receive increases in salary,
bonuses, commissions or awards.

Request No. 10: Any and all documents used by or communicated to
claims personnel since January 1, 2004, that contain information
about performance-based incentive plans.

Although Mid-Continent initially objected to these requests, on May 29,

2012, Mid-Continent provided some documents responsive to this request and

then provided additional documents on June 7, 2012.

Courts have held that "[q]ualifying for a monetary bonus, or other

employee incentive, because of the manner in which defendant's employees

respond to a claim, is certainly relevant to a bad faith claim."  Lyon, 2011 WL

124629 at *10 (citing Pochat v. State Farm Mut. Auto. Ins. Co., 2008 WL

5192427, *5 (D.S.D. 2008) ("such information [regarding employee award and

financial bonus program is] ... relevant to plaintiff's bad-faith insurance and

breach of contract claims ....")).

Mid-Continent asserts that, aside from the documents that have already

been provided to Signature, Mid-Continent does not have any general or

company-wide documentation responsive to these requests and that any

30

"'specific' documentation would be contained within each employee's personnel files."  See Docket No. 27 at ¶ 5.  Although the court finds this information to be discoverable, Mid-Continent asserts that it has provided Signature with all documents relating to this request and that no other documents exist.  Therefore, as to these requests, plaintiffs' motion to compel is denied as moot.

### 6.    Plaintiffs' Request No. 12:  Loss Ratios

Plaintiffs' request number 12 is as follows:

Request No. 12: All documents relating to efforts to reduce loss ratios or claims severity costs on Commercial General Liability Coverage policies in the last 10 years.  This Request includes all documents relating to claim severity or loss ratios for Commercial General Liability Coverage policies on either a national level, regional level, branch level, or individual adjuster level, or any other criteria whatsoever.

In response to this request, Mid-Continent objected on the grounds that the request would require Mid-Continent to devote substantial resources to find "all documents relating to claim severity or loss rations for Commercial General Liability Coverage policies on ... any ... criteria whatsoever" for the "last 10 years."   Mid-Continent also objected on the basis that the requested material would be of little relevancy and would place an unreasonable and oppressive burden on defendant.  Now, in response to Signature's motion to compel, Mid-Continent asserts that other than policy forms and endorsements, which have already been produced, that there are no documents responsive to this request.  See Docket No. 27 at ¶ 7.

31

"Claims ratios are inherently tied to bonus programs."  <u>Lyon</u>, 2011 WL 124629 at *10.  Thus, for the same reasons that documents relating to qualifying for a monetary bonus, or other employee incentives, are discoverable in a bad faith claim, loss ratios are also discoverable.  <u>See id.</u>  However, Mid-Continent is asserting that no documents relating to specific "efforts" to reduce loss ratios or claims severity costs exists and that any such "efforts" to "reduce loss ratios or claims severity costs" would be contained within a particular policy form or endorsement, which have already been produced for each claims file.  <u>See</u> Docket No. 27 at ¶ 7.  As a result, there is nothing for the court to compel under this request.  Therefore, as to this request, the motion to compel is denied as moot.

**7.     Plaintiffs' Request Nos. 17 and 18:  Bad Faith Claims and Transcripts**

Plaintiffs' requests numbers 17 and 18 read as follows:

<u>Request No. 17:</u> Any and all documents that identify past litigation involving claims of breach of contract or bad faith against the Defendant. The information provided should include the name of the lawsuit, file number, and name, address, and phone number of the litigant's attorneys.  This information is to be provided from January 1, 2004, to present.

<u>Request No. 18:</u> Any and all transcripts of depositions or trial testimony of any of Defendant's employees or officers since January 1, 2004, in any suit alleging breach of contract or bad faith.

Mid-Continent objects to this request on the grounds that the information sought is not relevant to any claim or defense and is unduly

32

burdensome and overbroad.  Mid-Continent has not provided any documents pursuant to this request.

### a. Relevance

Mid-Continent objects to Signature's request on the grounds that the information being requested has no relevance to the merits of Signature's claims in this case.  Additionally, Mid-Continent asserts that requiring it to produce all bad faith and breach of contract case information from states such as Texas would not reasonably bear upon the issues of this case.  Signature asserts that this request is relevant because it will identify other individuals who may have claims similar to Signature's which would show Mid-Continent's knowledge that it was acting in bad faith.  Additionally, Signature asserts that the requested information is relevant in determining whether Mid-Continent or its employees have provided testimony or admissions during the course of bad faith lawsuits.

Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleading.  For purposes of discovery, relevance has been defined as "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  Oppenheimer, 437 U.S. at 351.  Discovery requests should be considered relevant if there is any possibility that the information sought is relevant to any issue in the case, and should ordinarily be allowed, unless it is

clear that the information sought can have no possible bearing on the subject matter of the action.  See Brown Bear, 266 F.R.D. at 319 (citations omitted).

Whether Mid-Continent has engaged in conduct with other insureds that is similar to the conduct they are alleged to have engaged in with plaintiffs in this case is relevant.  Roth, 2003 S.D. 80, ¶ 49, 667 N.W.2d at 666 (quoting Campbell, 538 U.S. at 419) (one of the factors in determining the appropriateness and amount of punitive damages to award is "the conduct involved repeated actions or was an isolated incident; and [whether] the harm was the result of intentional malice, trickery, or deceit, or mere accident.").

Additionally, transcripts and deposition testimony of Mid-Continent's employees or officers in previous suits involving breach of contract or bad faith are also relevant.  "Testimony of defendant's officers or personnel in previous litigation is, by its very nature, public testimony in an adversarial environment to which neither the attorney-client privilege nor the attorney-work product privilege could attach.  A transcript of that testimony is not privileged."  Lyon, 2011 WL 124629 at *12.

Mid-Continent has the benefit of access to the transcripts of the depositions of its officers or other personnel who have testified in cases relating to breach of contract or bad faith actions.  The information would certainly be available to Mid-Continent to assist in preparing its witnesses and defense to Signature's claims.  Requiring Signature to ferret out this information from

34

other sources would be extremely costly and contrary to the cause of providing a "just, speedy, and inexpensive determination of every action...." <u>See</u> Fed. R. Civ. P. 1.

The requested information is relevant for several reasons, including revealing similar claims against the defendant; discovering prior adverse rulings against defendant on the same issues involved in this case; revealing prior declarations by Mid-Continent's personnel regarding the interpretation of claims manuals, protocols, and bonus or incentive programs; and revealing internal procedures used by Mid-Continent when handling similar actions. However, because no part of any file has been produced, the court does not have sufficient information to determine if there is a nexus between any of the the other breach of contract or bad faith litigation Mid-Continent may have been involved in and the plaintiffs' claims against Mid-Continent here.

Nevertheless, even though Mid-Continent has failed to carry its burden to show that the requested discovery is *irrelevant*, the court declines to issue a blanket order requiring–as plaintiffs request–a complete copy of all the litigation files involving a claim of breach of contract or bad faith. A single litigation file can be voluminous and extend to several bankers' boxes full of documents. Accordingly, the court will grant plaintiffs' request to this extent: Mid-Continent is ordered to produce to plaintiffs a copy of the complaint and answer as to each of the breach of contract and bad faith lawsuits, including

35

any amended complaints and answers thereto.  In addition, if a dispositive motion was filed in any of these cases (a Rule 12(b)(6) motion to dismiss or a motion for summary judgment), defendants shall produce a copy of each of the briefs filed in regard to that dispositive motion, though not the supporting affidavits and other documents.  If necessary, Mid-Continent must obtain these limited initial documents from either its in-house counsel, or from outside counsel who represented Mid-Continent in each of these cases.  After plaintiffs review these limited initial pleadings, plaintiffs may identify files that they believe have a factual or legal nexus to their own claims in this case and request copies of the entire litigation file as to those related claims.  Mid-Continent shall produce the litigation files requested by plaintiffs in their entirety.

Alternatively, if Mid-Continent still disputes the relevance of these files once plaintiffs have identified the files they wish to have access to, it may request a protection order and submit the complaints, answers, and dispositive briefs from the files requested by plaintiffs to the court for *in camera* review. The court will then be in a better position to rule on the relevancy of such files to the plaintiffs' claims in this case.

In addition to the limited initial pleadings identified above to be produced, Mid-Continent shall also obtain copies of any transcripts of deposition or trial testimony of its employees or officers in any of the litigation

36

files requested by plaintiffs.  Mid-Continent is ordered to contact counsel who represented it in the prior action, in-house counsel, as well as its officers and employees, in an attempt to obtain copies of these transcripts.

### b.   Unduly Burdensome

Mid-Continent also objects to Signature's request on the grounds that the burden and expense of the proposed discovery outweighs its likely benefit. Mid-Continent asserts that it "does not maintain a 'repository' for litigation files."  Thus, Mid-Continent asserts that it would be required to "review every single claim file to determine whether it involved litigation and then determine whether that litigation involved breach of contract or bad faith."  See Docket No. 26 at 10.  Mid-Continent indicates that it would then need to contact the attorney it retained for defense of the lawsuit and obtain the requested information.  Id.  Mid-Continent asserts that it would it would have to follow the same procedure for any deposition transcripts.  Mid-Continent estimates that this would require it to review more than 42,000 files, which would take approximately 14,665 hours of work.  Id.

Signature disputes that Mid-Continent would have to review every single claim to determine whether the claim involved breach of contract or bad faith. Mid-Continent admitted that all of its files are electronic so that there are no file folders.  See Docket No. 24-1 at 3.  Furthermore, Keith Nye, Assistant Vice President of Mid-Continent, noted that an electronic search could be performed

for claims filed after December of 2007.  <u>See</u> Docket No. 27 at ¶ 8(a).  As to claims before December of 2007, although they were not electronically maintained, the claims were imaged.  <u>Id.</u> at ¶ 8(b).  Thus, it is highly unlikely that Mid-Continent would be required to physically review every claim file. Rather, Mid-Continent should be able to conduct a search of the electronic files using keywords such as "bad faith" and "breach of contract" to locate relevant files.[8]

Mid-Continent request that if this court orders compliance with this discovery request that the court should also shift the cost of producing such discovery to Signature due to the burden and expense of producing the requests.  "The presumption [under the federal rules of discovery] is that the responding party must bear the expense of complying with discovery requests, but he may invoke the court's discretion under Rule 26(c) to grant orders protecting him from 'undue burden or expense.'"  <u>Oppenheimer</u>, 437 U.S. at 358.  Courts have the discretion to shift all or part of the costs of production to the requesting party.  <u>Peskoff v. Faber</u>, 251 F.R.D. 59, 61 (D.D.C. 2008); <u>Zubalake v. UBS Warburg LLC</u>, 217 F.R.D. 309, 318 (S.D.N.Y 2003).  Costs for producing documents are to be shifted only when an "undue burden or expense" is imposed on the responding party.  <u>Zubalake</u>, 217 F.R.D. at 318.

---

[8] Mid-Continent performed a keyword search in response to Plaintiffs' Request No. 25.  <u>See</u> Docket No. 24-1 at 11-12 (Mid-Continent's response).

Whether the burden or expense of producing the discovery is "undue" is determined by considering whether it "outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Id.

Here, Mid-Continent has not shown sufficient, specific facts to show that the burden or expense of producing copies of the files is undue, and it is Mid-Continent's burden to do so. Mid-Continent has not shown that they cannot perform an electronic search using specified terms to find files associated with breach of contract or bad faith claims. Performing an electronic search would significantly reduce the time necessary to find and produce the required files. Furthermore, Mid-Continent can be presumed to have vastly more resources than Signature, a development company in Rapid City, South Dakota.[9] Finally, the requested documents would include prior sworn testimony of Mid-Continent employees, which may show whether Mid-Continent acted knowingly or recklessly without a reasonable basis, which goes directly to whether Mid-Continent acted in bad faith in this case. The court finds that Mid-Continent has not shown that producing the requested documents is unduly burdensome or that cost-shifting is appropriate in this case. However, as to copies made for

---

[9] Signature asserts that Mid-Continent is a subsidiary of Great American Insurance Group, which is part of American Financial Group (NYSE:AFG) – a $3.7 billion dollar company.

plaintiffs, while the employee time expended in the making of such copies shall not be chargeable to plaintiffs, Mid-Continent may charge plaintiffs ten cents per page for all the pages copied.  Plaintiffs may make their own arrangements for having the copies picked up and shipped to them, or plaintiffs may allow Mid-Continent to arrange for shipping and then reimburse Mid-Continent for that expense.

c.     **Overbroad**

Mid-Continent also objects to the requests on the basis that the requests are overbroad and asks that the court specify conditions for the discovery. Mid-Continent asserts that the requests are overbroad because they seek documents from cases arising in states other than South Dakota.  Mid-Continent requests that the court limit the discovery to cases in South Dakota. Mid-Continent correctly points out that the "Supreme Court has cautioned that evidence of a company's practices which are relevant to punitive damages should be limited to evidence of practices in the same state as the plaintiff." See Docket No. 26 at 9-10 (citing Anspach v. United of Omaha Life Ins. Co., 2011 WL 3862267, *6 (D.S.D. 2011) (citing State Farm v. Campbell, 538 U.S. 408, 419-24 (2003)).  However, in this case, Signature is not only seeking punitive damages.  Rather, Signature is asserting several claims including bad faith and breach of contract.

40

As discussed above, lawsuits involving bad faith or breach of contract to which Mid-Continent was a party, whether they occurred in South Dakota or another state, are relevant in determining whether Mid-Continent acted knowingly or recklessly in this case.  Mid-Continent asserts that such discovery, if ordered, should be limited to litigation that occurred in South Dakota.

It is likely that the number of cases in South Dakota, in which Mid-Continent was involved, that included a bad faith or breach of contract claim, are very few.  Furthermore, it is not very likely that the total number of cases that Mid-Continent was involved in outside the state of South Dakota, which involved breach of contract or bad faith claims, are particularly overwhelming. Therefore, the court finds that Signature is entitled to discovery on claims files and transcripts involving cases outside the state of South Dakota.  However, given that the incidents forming the basis for Signature's lawsuit date back to 2007, the court will limit the time period for which Mid-Continent must produce claims files and transcripts of depositions or trial testimony from January 2006 to the present.

Based on the discussion above, the court finds that other claims of breach of contract or bad faith, as well as transcripts of depositions or trial testimony of Mid-Continent's employees in suits alleging breach of contract or bad faith are relevant in determining whether Mid-Continent acted knowingly

41

or recklessly in this case when Mid-Continent withdrew from the <u>Carlson</u> actions and refused to defend the other cases.  Additionally, the court finds that it is not unduly burdensome for Mid-Continent to provide such information given that Mid-Continent can perform an electronic search using keywords and phrases to find the requested documents.  Finally, the court finds that given the limited number of breach of contract or bad faith cases involving Mid-Continent in the state of South Dakota, that requiring Mid-Continent to produce files for relevant cases outside the state of South Dakota is not overly broad.  Accordingly, with regard to these requests, the motion to compel is granted as outlined above.

### 8.    Plaintiffs' Request No. 25:  E-mail with Identifiers

Plaintiffs' requests numbers 25 reads as follows:

<u>Request No. 25:</u> Copies of all documents and e-mails (with attachments) including   metadata intact, from all company databases, including computers of the following persons:
1.    Robert Anderson
2.    Raymond Corley
3.    Curt Daniels
4.    Billeye Davidson
5.    Caroline Goodspeed
6.    Gregory Lawrence
7.    Kathy Ramsey-Hess
8.    Keith Nye
9.    Robert Pileggi
10.   Frank Pope

that contain any of the words:

1.    Carlson
2.    Kerr

42

3.      Klosterman
4.      "Signature Development"
5.      "Signature Water"
6.      "1535425"
7.      "1538509"
8.      "1538521"

Mid-Continent objected to this request on the grounds that it sought information that was protected by the attorney-client privilege, that it sought information protected by the attorney work-product doctrine, that it imposed an undue burden on defendant, and that the request had, in substance, been propounded by nearly every previous request made.  See Docket No. 24-1 at 12 (Mid-Continent's response).  However, subject to these exceptions, Mid-Continent indicated that it was working with its Information Technology department on the request and would provide Signature with any non-protected documents.  Id.  Mid-Continent then provided the results to Signature, however the results were in .pst format.  See Docket No. 27 at ¶ 11. Because the results were in .pst format, counsel for Mid-Continent, by letter dated June 15, 2012, informed counsel for Signature that Mid-Continent would "need approximately six weeks to prepare these files for production to your office." [10]  See Docket No. 28-2.

_____

[10] Counsel for Mid-Continent also noted in the June 15, 2012, letter that the reason for the six-week delay was due to the nature of the files (.pst format), which required manually opening each separate file within Outlook, taking substantial time and effort.  Plaintiffs' counsel did not object or respond to this correspondence.  See Docket No. 28 at ¶ 3.

Here, Signature's request limited the search to specific computers using specific terms. "The use of specific words or key phrases in electronic searches of computerized claim files has been approved historically in this district." Lyon, 2011 WL 124629 at *11 (citations omitted).  Mid-Continent asserts that this information has been provided.  Additionally, the six weeks Mid-Continent asserted it needed to produce the actual documents has come and gone and the court assumes that Mid-Continent provided the documents as they indicated they would.  As a result, though the documents are clearly discoverable, there is nothing to compel with regard to this request.  Therefore, as to this request, the motion to compel is denied as moot.  If Mid-Continent has not complied with this document request, it is hereby ordered to do so.

### 9.    Plaintiffs' Request No. 27:  Privilege Log

Plaintiffs' request number 27 reads as follows:

Request No. 27: If, in responding to this request for production of documents, you withhold production of any document on the ground of privilege not to disclose the document, please state with respect to each such document:

    a.    The type of document involved and a general description fo the contents of the document;

    b.    The name, business and residence address and telephone numbers, and position of the individual from whom the document emanated;

    c.    The name, business and residence addresses and telephone numbers, and position of each individual to whom the document or a copy of the document was sent;

    d.    The date of the document;

    e.    The privilege upon which you rely in withholding the document;

> f.   The facts upon which you rely in support of its claim that it is privileged to withhold the document;
>
> g.   The names, business and residence address and telephone numbers, and positions or occupations of individuals known or believed by you to have knowledge concerning the factual basis for your assertion of privilege with regard to the document.

Mid-Continent objected and noted that it was withholding documents from the declaratory judgment and settlement files of Mid-Continent's counsel. On June 7, 2012, Mid-Continent submitted a Vaughn Index wherein it cataloged the documents it was claiming were privileged or work product.

Signature asserts that Mid-Continent has impliedly waived the attorney-client privilege that protects Mid-Continent's communications with the now-Honorable Craig Pfeifle[11] in the underlying declaratory judgment action in the Carlson matter. Signature asserts that Mid-Continent "waived, or implicitly waived, any claims of attorney-client privilege when it asserted in its Amended Answer that Plaintiffs' claims are wholly barred by settlement and release." See Docket No. 23 at 21 (citing Docket No. 21 at 21, ¶ D). Signature asserts that this affirmative defense has made relevant Mid-Continent's attorney's opinion (Judge Pfeifle's) "as he will have to testify as to whether he believed there was a meeting of the minds on the settlement." See Docket No. 23 at 21. Signature

---

[11] Judge Pfeifle ascended to the bench after his representation of Mid-Continent in the declaratory judgment action brought by Signature regarding the Carlson case.

45

asserts that the statements and conclusions of Mid-Continent's attorney are vital to Signature's ability to respond to Mid-Continent's argument.

"The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice.  In a diversity action, state law determines both the existence and scope of the attorney-client privilege." Brown Bear, 266 F.R.D. at 317.  "Four elements must be present to invoke the attorney-client privilege: (1) a client; (2) a confidential communication; (3) the communication was made for the purpose of facilitating the rendition of professional legal services to the client; and (4) the communication was made in one of five relationships enumerated in S.D.C.L § 19-13-3." Id.  "The party claiming the privilege carries the burden of establishing all of the essential elements." Id. (citations omitted).[12]

---

[12] When an insurance company "unequivocally delegates its initial claims function and relies *exclusively* upon outside counsel to conduct the investigation and determination of coverage, the attorney-client privilege does not protect such communications." Bertelsen v. Allstate Ins. Co., 2011 S.D. 13, ¶ 48 n.4; 796 N.W.2d 685, 701 n.4 (citing, *inter alia*, Dakota, Minnesota & Eastern R.R. Corp. v. Acuity, 2009 S.D. 69, ¶ 56; 771 N.W.2d 623, 638). "When attorneys act as claims adjusters, their communications to clients and impressions about the facts are treated as the ordinary business of claims investigation, which is outside the scope of the attorney-client privilege." Id. Here, based on the record before this court, it appears that Mid-Continent had already made its investigation and coverage determination prior to the declaratory judgment action brought by Signature and, thus, prior to Judge Pfeifle's representation of Mid-Continent.  Hence, Judge Pfeifle was not "acting as a claims adjuster" in his representation of Mid-Continent.

"The attorney client privilege may be implicitly waived." McElgunn v. CUNA Mut. Grp., 2009 WL 1514392, *1 (D.S.D. 2009). "To find an implied waiver of the privilege by virtue of an affirmative reliance on some matter that has been put into issue, three factors must be satisfied." Id. (citing Hearn v. Rhay, 68 F.R.D. 574, 580-81 (E.D. Wash. 1975)). "These factors include: '(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.' " Id.

The South Dakota Supreme Court has recently held that "[a]pplication of the Hearn test alone provides insufficient guidance to be just and workable." Bertelsen, 2011 S.D. at ¶ 52, 796 N.W.2d at 703. The South Dakota Supreme Court supplemented the Hearn test to "emphasize further the importance of protecting the attorney-client privilege." Id. at ¶ 53, 796 N.W.2d at 703. The South Dakota Supreme Court explained its position as follows:

> First, the analysis of this issue should begin with a presumption in favor of preserving the privilege. Second a client only waives the privilege by expressly or impliedly injecting his attorney's advice into the case. A denial of bad faith or an assertion of good faith alone is not an implied wavier of the privilege. Allstate Ins. Co. v. Clancy, 936 N.E.2d 272, 277-78 (Ind. App. 2010) (citing Nat'l Union Fire Ins. Co. v. Dominquez, 873 S.W.2d 373, 375 (Tex. 1994)). "Rather, the issue is whether [Mid-Continent], in attempting to demonstrate that it acted in good faith, actually injected its reliance upon such advice into the litigation." Id. at

47

278.  The key factor is reliance of the client upon the advice of his attorney.

Id.

Mid-Continent asserts in its Amended Answer that Signature's claims are barred by the Settlement and Release in the declaratory judgment action.  This affirmative defense relates to the allegations in paragraphs 30-33 of the Complaint in which Signature alleges that it offered to dismiss the declaratory judgment action against Mid-Continent if Mid-Continent paid for the attorneys' fees and expenses it incurred to defend the Carlson lawsuit.  Signature alleges that Mid-Continent accepted this offer.  However, Mid-Continent never did reimburse Signature for these expenses.  Rather, Signature asserts that Mid-Continent, through its then-counsel, Craig Pfeifle, changed the terms of the settlement by conditioning payment upon Signature releasing Mid-Continent from any and all claims, including bad faith claims.  See Docket No. 21 at ¶¶ 30-33.  The issue is whether, by asserting that Signature's claims are barred by the unconsummated settlement of the declaratory judgment action, Mid-Continent waived the privilege covering communications between it and Judge Pfeifle.

Applying the standard set forth in Bertelsen, there is a presumption in favor of preserving the privilege.  Based on Bertelsen, the court cannot say that Mid-Continent has expressly or impliedly injected its attorney's advice into this case.  There is no indication in the amended answer to the complaint that Mid-

48

Continent is raising the affirmative defense of advice of counsel, nor is there any indication that Mid-Continent is relying upon the advice of counsel to argue that its actions were in good faith.  Rather, Mid-Continent is asserting the affirmative defense that the claims alleged by Signature are barred pursuant to a settlement agreement and release.  Signature has failed to show that Mid-Continent has implicitly waived the attorney-client privilege.  Furthermore, asserting this affirmative defense does not in and of itself implicitly waive the privilege.  See Bertelsen,  2011 S.D. at ¶ 53, 796 N.W.2d at 703.   Thus, as to this discovery request at this stage of the proceedings, the court denies Signature's motion to compel.

**D.  Individual Discovery Requests:  Third Set of Requests for Production of Documents**

**1.  Plaintiffs' Request No. 1:  Perry Claims File**

Plaintiffs' request number 1 reads as follows:

Request No. 1: Your complete claims files relating to the Perry lawsuit/claim, whether maintained in defendant's field office, regional office, home office, or any other office, including without limitation:

a.   All letters, memoranda, and other forms of written or computerized communication to or from any employee of defendant Mid-Continent Casualty Company relating in any way to the processing of the claim at issue in this action;

b.   All written or computerized record of any oral communication, whether in person or by telephone, relating in any way to the claim at issue in this action;

49

      c.     All other written or computerized communication pertaining to the claim at issue in this litigation;

      d.     The file folders in which the preceding documents are kept.

Mid-Continent objects to this request on the grounds that the <u>Perry</u> file is not relevant to the case at hand and contains information protected by the attorney-client privilege.

The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." <u>E.E.O.C.</u>, 2007 WL 1217919 at *1 (citing <u>Hofer v. Mack Trucks, Inc.</u>, 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." <u>Id.</u> (citing <u>Cervantes v. Time, Inc.</u>, 464 F.2d 986, 994 (8th Cir. 1972)).

Signature asserts that the <u>Perry</u> litigation is another lawsuit with substantially the same claims as <u>Kerr</u>, <u>Carlson</u>, and <u>Klosterman</u> wherein Mid-Continent refused to defend Signature.[13]  <u>Perry</u> has the same plaintiffs' attorney, the same defendants, and the same claims that the Perrys' home was damaged as a result of expansive soils.  <u>See</u> Docket No. 30-1.  The <u>Perry</u>

---

[13] Mid-Continent has already disclosed the claims files from the <u>Kerr</u>, <u>Carlson</u>, and <u>Klosterman</u> cases.

complaint was filed on July 31, 2009, and notice was given to Mid-Continent shortly thereafter.  Signature asserts that the information in the Perry file is as relevant as the Kerr, Carlson, and Klosterman files because it contains discussions regarding Mid-Continent's duties under the same insurance policies.

Mid-Continent declined to defend the Perry lawsuit as explained in a letter dated October 1, 2009.  See Docket No. 30-2.  Mid-Continent indicated in the letter that the "alleged damage within the complaint are not 'Property-Damage' resulting from an 'Occurrence' and/or are excluded by policy exclusions and exclusionary endorsements."  Id.  Three weeks after Mid-Continent refused to defend the Perry lawsuit, Mid-Continent reconsidered its decision in the Carlson case and withdrew from defending that case based on the same reasoning in the Perry action.  See Docket No. 30-3.

Signature also asserts that the facts and circumstances of Perry will also have to be discussed during depositions in this case as it raises questions as to which policies of insurance apply to these claims.  Signature notes for example that, in Carlson, Signature sold the lot in question to the Carlsons on October 3, 2003.  See Docket No. 30-4.  Mid-Continent then determined that the appropriate policy for date of loss purposes was the policy in effect from 8/22/03 to 8/22/04.  However, when Mid-Continent reconsidered its position,

51

Mid-Continent decided that there were no allegations in the complaint that triggered coverage based on the policy in effect from 8/22/04 to 8/22/05.

In Perry, Signature sold the lot in question to Dakota Castles on May 21, 2004, and provided the warranty deed to the property on September 20, 2004. See Docket No. 30-4.  When Signature tendered defense to Mid-Continent in the Perry case, Mid-Continent based its denial of coverage on the policy dated 8/22/05 to 8/22/06.  Signature asserts that Mid-Continent used this policy rather than the 8/22/03 to 8/22/04 policy because the former policy had additional endorsements and exclusions that were not applicable to the latter policy.  Signature asserts that it should be allowed to discover the documents in the Perry file so as to inquire into the basis for Mid-Continent's decisions as to which policy applies.

Mid-Continent asserts that the Perry file is not relevant because there is no allegation of bad faith in relation to the Perry file and because the files contain information protected by the attorney-client privilege.  Generally, as noted above, a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party.  See Fed.R.Civ.P. 26(b)(1).  Discovery should ordinarily be allowed unless it is clear that the information sought has no possible bearing on the claims and defense of the parties otherwise on the subject matter of the actions.

In this case, Signature is asserting that Mid-Continent breached the contract by breaching its duty to defend Signature in various lawsuits.  In Perry, Mid-Continent refused to defend based on the insurance policy dated 8/22/05 to 8/22/06.  The court cannot say that the Perry file clearly has no bearing on the claims in this action.  The Perry file is relevant in determining what process Mid-Continent goes through in determining which policy period applies for coverage purposes.  Additionally, the Perry file could lead to evidence as to whether Mid-Continent, when making a decision to defend a claim, arbitrarily chooses a period of policy coverage that excludes coverage. This would bear directly on whether Mid-Continent breached its fiduciary duty to Signature.  Thus, the court finds that the Perry file is relevant.

Mid-Continent also asserts that the file contains information protected by the attorney-client privilege.   As the court noted in its above discussion, "[t]he attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice.  In a diversity actions, state law determines both the existence and scope of the attorney-client privilege." Brown Bear, 266 F.R.D. at 317.  The same four elements discussed above must be shown in order to establish attorney-client privilege as to the Perry file.  Mid-Continent bears the burden of establishing all four essential elements.  Id.

53

With respect to this claim, Mid-Continent has not alleged any facts which would establish the four necessary elements to show that documents in the Perry file are protected by the attorney-client privilege.  Mid-Continent has not carried its burden of proving each of the elements of the state statutory attorney-client privilege.  See id.  Furthermore, the court is unable to determine whether documents related to Mid-Continent's claim are covered by the attorney-client privilege based on Mid-Continent's mere assertion that documents exists that are so privileged.  Therefore, the court has no factual basis for concluding that any of the documents within the Perry file requested by Signature would be subject to the attorney-client privilege.

Based on the above discussion, the court finds that the Perry file is relevant.  Therefore, as to this request, the motion to compel is granted.  In the alternative, as to any discrete documents within the Perry file that Mid-Continent has a *bona fide* claim of privilege, Mid-Continent shall produce to the court for *in camera* review those parts of the file which it claims are subject to the attorney-client privilege along with a Vaughn index.  Mid-Continent shall summarize, in factual and not conclusory terms, the nature of the material withheld and shall link each specific claim of privilege to specific documents. See Vaughn, 484 F.2d at 826-28.  The court will then assess whether the attorney-client privilege applies to the documents and whether they are subject to discovery.  Mid-Continent shall produce all documents described above,

54

whether directly to Signature, or to the court for *in camera* review, within 21 days from the date of this order.

### 2. Plaintiffs' Request No. 3: "Negligent Misrepresentation" Documents

Plaintiffs' request number 3 reads as follows:

Request No. 3: A complete copy of the entire file relating to each declaratory judgment action in which Mid-Continent was/is a party, including the pleadings, final determination of the court, and any transcripts, involving allegations of negligent misrepresentation against an insured of Mid-Continent from 2005 to present.

Mid-Continent objected to this request on the grounds that the requested information is irrelevant to the subject matter and that it is overly burdensome. Mid-Continent also objected on the grounds that the request sought information protected by the attorney-client and attorney work-product privileges.

Signature asserts that this request is relevant in determining whether Mid-Continent acted knowingly or recklessly in this case. Signature asserts that the information is further relevant because in the cases forming the basis for litigation in this action Mid-Continent either withdrew its defense or refused to defend a claim under the policy when Signature was being sued for negligent misrepresentation. Mid-Continent's basis for these denials was that there was no "property damage" or an "occurrence" under its policy. Signature argues that if Mid-Continent was aware of prior ruling to the contrary, then it would show that Mid-Continent's actions were taken in bad faith.

The court agrees with Signature that these files are relevant to determining whether Mid-Continent acted knowingly or with reckless disregard when it withdrew from defending the Carlson action and when it refused to defend the claims in the other cases.  In addition, as discussed in Section C.6(b-c) with regards to the request for files relating to bad faith and breach of contract, this request is not unduly burdensome as Mid-Continent can perform an electronic search using keywords and phrases to find the files, thereby limiting the number of files they must review and the burden placed upon Mid-Continent in producing these files.  Finally, with respect to this request, Mid-Continent has not carried its burden of alleging facts necessary to establish the existence of either the attorney-client privilege or the work-product doctrine. See Rickabaugh, 361 N.W.2d at 624-25.

Therefore, as with the request for breach of contract or bad faith files, Mid-Continent is ordered to produce to plaintiffs a copy of the complaint and answer as to each declaratory judgment action involving negligent misrepresentation.  In addition, if a dispositive motion was filed in any of these cases, defendant shall produce a copy of each of the briefs filed in regard to that dispositive motion, though not the supporting affidavits and other documents. If necessary, Mid-Continent must obtain these limited initial documents from either its in-house counsel, or from outside counsel who represented Mid-Continent in each of these cases.

After plaintiffs review these limited initial pleadings, plaintiffs may identify files that they believe have a factual or legal nexus to their own claims in this case and request copies of the entire litigation file as to those related claims. Mid-Continent shall produce the files requested by plaintiffs in their entirety. Mid-Continent shall produce the requested files, whether directly to Signature, or to the court for *in camera* review.  As with the previous request for files, the court will limit the time line for which Mid-Continent must produce the files from 2006 to the present.  In addition, Mid-Continent may charge ten cents for each copied page.

In addition to the limited pleadings which Mid-Continent is ordered to produce, Mid-Continent shall also obtain and produce to plaintiffs copies of any transcripts of testimony by a Mid-Continent employee associated with the files requested by plaintiffs.

### 3.    Plaintiffs' Request No. 4:  Privilege Log

Plaintiffs' request number 3 reads as follows:

Plaintiffs' request number 27 reads as follows:

> Request No. 4: If, in responding to this request for production of documents, you withhold production of any document on the ground of privilege not to disclose the document, please state with respect to each such document:
>    a.    The type of document involved and a general description fo the contents of the document;
>    b.    The name, business and residence address and telephone numbers, and position of the individual from whom the document emanated;

c.    The name, business and residence addresses and telephone numbers, and position of each individual to whom the document or a copy of the document was sent;

d.    The date of the document;

e.    The privilege upon which you rely in withholding the document;

f.    The facts upon which you rely in support of its claim that it is privileged to withhold the document;

g.    The names, business and residence address and telephone numbers, and positions or occupations of individuals known or believed by you to have knowledge concerning the factual basis for your assertion of privilege with regard to the document.

Mid-Continent asserts that because it has not produced any documents with regards Requests 1, 2, or 3 in Plaintiffs' Third Set of discovery requests, there was no privilege log to provide in connection with Request Number 4. Mid-Continent notes that if it ultimately produces documents in response to the requests contained in Plaintiffs' Third Set of discovery requests, it will also produce a privilege log. As a result, there is nothing to compel in this case. Therefore, as to this request, plaintiffs' motion to compel is denied.

**E.    Attorneys' Fees**

Rule 37 of the Federal Rules of Civil Procedure makes mandatory the assessment of expenses, including attorney's fees, associated with a successful motion to compel. See Fed. R. Civ. P. 37(a)(5)(A). An exception for this mandatory assessment of expenses is provided, *inter alia*, for situations where the position of the party resisting discovery was substantially justified.

As to several of Signature's requests (Nos. 1, 4, 7-10, 12, 25 – second set of requests) Mid-Continent had provided the requested documents at the time Signature filed its motion to compel. There was no real dispute as to the discovery of these documents. Therefore, as to these requests, attorneys' fees are not appropriate and the court will not award any sanctions against Mid-Continent for that proportionate amount of attorney time spent by Signature's attorneys on these issues.

With regards to Signature's request for documents relating to Mid-Continent's communication with its attorney in the underlying declaratory judgment action in the <u>Carlson</u> matter (request number 27 – second set of requests), Signature failed to show that Mid-Continent waived the attorney-client privilege. As to this request, the court finds that Mid-Continents position was substantially justified.

As to the request for Mid-Continent's employees' personnel files, (request number 5 – second set of requests), Mid-Continent agreed that it would provide the requested documents once the district court signed the protective order that the parties had stipulated to and submitted for the Court's consideration. That protective order has been signed. In addition, this court limited the scope of the requested documents. As to this request, the court cannot say that Mid-Continent was not substantially justified in withholding these documents until the protective order was in place.

59

Finally, as to the request for the claims file in the <u>Perry</u> action (request number 1 – third set of requests), Mid-Continent failed to rebut Signature's showing of relevancy. Additionally, Mid-Continent provided no basis to assert that the file was covered by either the attorney-client or work-product privileges. Additionally, as to the requests for litigation files and transcripts involving breach of contract or bad faith litigation (requests numbers 17-18 – second set of requests), and declaratory judgment files involving negligent misrepresentation actions (request number 3 – third set of requests), Mid-Continent failed to rebut Signature's threshold showing of relevancy and failed to show that the documents requested were covered by either the attorney-client or work-product privileges. However, despite this, the court limited the scope of these requests in terms of the period of years Mid-Continent must produce the records and as to the documents that Mid-Continent must initially produce. Therefore, as to these requests, although it is difficult for the court to conclude that Mid-Continent's position was substantially justified, the court concludes that attorneys fees should not be awarded.

## CONCLUSION

Good cause appearing, it is hereby

ORDERED that plaintiffs' motion to compel [Docket No. 22] is granted in part and denied in part as more specifically described above.

## NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  See Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  Id.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require review by the district court.

Dated September 18, 2012.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE